BARRY J. PORTMAN
Federal Public Defender
NED SMOCK
Assistant Federal Public Defender
555 - 12th Street, Suite 650
Oakland, CA 94607
Telephone: (510) 637-3500

Attorney for Defendant
KIMBERLY WELLS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | No. CR-08-00275 MMC |
| Plaintiff,   ) | |
| ) | SENTENCING MEMORANDUM |
| v.   ) | |
| ) | |
| KIMBERLY WELLS,   ) | Hearing Date: June 25, 2008 |
| ) | Time:         2:30 p.m. |
| ) | Court:        Hon. Maxine M. Chesney |
| Defendant.   ) | |
| _____ ) | |

    Kimberly Wells will be before the Court for judgment and sentencing on Wednesday, June 25, 2008. United States Probation recommends a sentence of 12 months incarceration. The defense concurs in this recommendation and asks only that the Court sentence Ms. Wells to 12 months *and one day* to ensure that she has the opportunity to earn good time credit, which would not be possible were she sentenced to 12 months.

**I.    Category VI Overstates Ms. Wells' Criminal History**

    The calculations set forth in the Presentence Report establish a criminal history of category VI. Given that the total adjusted offense level is 7, the advisory guideline range would be between 15 and 21 months. However, United States Probation correctly notes that the category VI criminal history finding overstates the seriousness and significance of Ms. Wells' prior record. At worst, Ms. Wells should be in category V, resulting in an advisory range of between 12 and 15 months.

1    Kimberly Wells was born to an alcoholic mother who was incapable of providing the stable, nurturing environment necessary to facilitate a healthy childhood. The Nevada Youth Parole Bureau reported that Ms. Wells was "raised in a chaotic and substance abusing family system in which she had very little supervision, guidance and modeling." This is an understatement. Ms. Wells never knew her father because he and her mother were not involved in a relationship. A succession of boyfriends traipsed in and out of the home as Ms. Wells grew up. One of her mother's boyfriends sexually molested her when she was eleven years old. Her mother supported her and her sisters with food stamps and Social Security checks. Ms. Wells was frequently forced to care for her mother - driving her from place to place because she was too intoxicated to drive.

Ms. Wells started to suffer the effects of depression as an adolescent and she turned to drugs as an escape from her difficult circumstances. She began to smoke marijuana and was shooting methamphetamine intravenously by the age of thirteen. She remembers that methamphetamine was appealing to her because it helped her to avoid her emotions. She started spending more and more time away from her mother's house and she dropped out of school during ninth grade. At 15, Ms. Wells became a mother. At approximately 16 years old, she started to attend counseling and was given anti-depressant medication. Unfortunately, Ms. Wells has never been able to escape her depression - she has attempted suicide approximately six times. The first attempt occurred when she was approximately 18 years old when she swallowed a bottle of her sister's seizure medication. The most recent attempt occurred earlier this month at Santa Rita when Ms. Wells cut her wrist. She was hospitalized for a period of days but is now back housed at the jail receiving heavy doses of anti-depressants.

Ms. Wells lived in Lyon County, Nevada as a teenager. Due to that county's overwhelmingly harsh treatment of drug addicts, her criminal history calculations are wildly inflated by a series of arrests and convictions that occurred during five months when she was 18 years old. On August 7, 1999, Ms. Wells was arrested in Lyon County when officers located hypodermic needles and drug paraphernalia in her vehicle. A drug test during her booking revealed that she had cocaine, marijuana, and opiates in her system. Needless to say, in most jurisdictions a first adult arrest for possession of drug paraphernalia and being under the influence would either result in diversion with drug treatment, or a misdemeanor. Instead, Ms. Wells was convicted of two felony counts of use of a controlled substance and sentenced to five years

of probation. Less than one month later, on August 29, 1999, Ms. Wells was again pulled over and was found to be in possession of alcohol and methamphetamine. A urine sample came back positive for methamphetamine. Ms. Wells was again convicted of a felony charge of possession of narcotics. One month after that, on September 29, 1999, Ms. Wells was arrested for a violation of probation and submitted a urine sample that was positive for methamphetamine and marijuana. She was again convicted of a felony possession charge. On December 13, 1999, Ms. Wells tested positive for methamphetamine and was convicted of possession of a dangerous drug without a prescription. She received a one year prison sentence. In the meantime, probation on two of the earlier cases was revoked and she was sentenced to 12 to 48 months in state prison. This harsh treatment of drug addicts results, in Ms. Wells' case, in nine criminal history points - all for possession or use of methamphetamine during a several month period while she was 18 years old.

It cannot be said that nine criminal history points accurately reflect the seriousness of for four minor cases involving being under the influence of narcotics as a teenager. In many jurisdictions, Ms. Wells might have been given diversion involving drug treatment, and positive tests would have resulted in referrals to more comprehensive residential treatment rather than successive felony convictions and more and more prison time. Ms. Wells was a hopelessly addicted eighteen year old at the time, and nine points for being caught under the influence of narcotics four times during a period of months result in a vast overstatement of her criminal history. At most, Ms. Wells should be sentenced under Category V.

**II.    A Sentence of 12 Months and One Day Adequately Addresses the Considerations in 18 U.S.C. § 3553**

It is worth noting that this escape charge results from Ms. Wells walking out of the halfway house in the Tenderloin. She was being pestered by a male resident and feeling stressed and uncomfortable. Under these circumstances, Ms. Wells took the ill-advised step of leaving the residence. She recognizes that she deserves punishment for this mistake. She acknowledged responsibility in an interview after her return to custody and reported to United States Probation that she regrets her conduct and apologizes to the Court. An additional year in federal prison consecutive to Ms. Wells' remaining term is certainly more than sufficient to reflect the seriousness of her conduct and provide just punishment, particularly when her conduct is viewed against the background of her difficult childhood and fragile mental health condition.

**III.     Conclusion**

This Court should follow the recommendation of United States Probation and sentence Ms. Wells to the low end of the 12-15 month range. The defense asks that the Court add one day to the 12 month sentence recommended by Probation because she would not be entitled to good time credit unless her sentence is longer than 12 months. In addition, Ms. Wells asks that this Court recommend that she be housed at Dublin, because there is a therapist at the facility she has worked closely with in the past. She is anxious to return to Dublin to recommence treatment with this therapist.

Ms. Wells thanks the Court for considering this memorandum.

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

Dated: June 22, 2008            /s/ Ned Smock
Ned Smock
Assistant Federal Public Defender
Attorney for Defendant
KIMBERLY WELLS