JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TAREK J. HELOU (CABN 218225)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California  94102
    Telephone:     (415) 436-7071
    Facsimile:     (415) 436-7234
    Tarek.J.Helou@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 08-275 MMC |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| KIMBERLY WELLS, | Hearing Date: June 25, 2008<br>Time: 2:30 p.m.<br>Judge: Hon. Maxine M. Chesney |
| Defendant. | |

**I.**
**INTRODUCTION**

On April 29, 2008, a grand jury indicted defendant Kimberly Wells, alleging that she escaped from custody on March 24, 2008, in violation of 18 U.S.C. § 751(a). The defendant's underlying sentence was for aiding and abetting bank robbery. That was not the defendant's first escape from custody: she escaped from custody in 2003 while serving the same sentence. (Presentence Report ("PSR"), ¶ 29.)

1   On May 14, 2008, the defendant pleaded guilty under Federal Rule of Criminal Procedure
2   11(c)(1)(A)-(B).  In her Plea Agreement, the defendant admitted that she was in Bureau of
3   Prisons ("BOP") custody after he was transferred from a federal prison to a halfway house in San
4   Francisco to finish her sentence for a felony conviction.  (Plea Agreement at 2:7-10.)  She also
5   admitted that she was still in BOP custody and serving that sentence the entire time he was at the
6   halfway house.  (*Id.* at 2:11-12.)  Finally, she admitted that on March 24, 2008, she knowingly
7   and voluntarily left the halfway house without permission even though she was not scheduled for
8   release until August 14, 2008.  (*Id.* at 2:10-13.)

9   In the Plea Agreement, the parties agreed that the defendant's adjusted offense level
10  under the sentencing guidelines was seven.  (*Id.* at 3:7-15.)  The United States agreed that an
11  appropriate sentence would be at the low end of the applicable guidelines range.  (*Id.* at 4:26-27.)
12  The defendant, in turn, agreed not to seek a departure from the guidelines range.  (*Id.* at 3:17-20.)
13  The U.S. Probation Office agreed with the parties that the defendant's adjusted offense level was
14  seven points.  (PSR, ¶ 19.)

15  The parties did not agree to the defendant's criminal history category, but left that
16  determination to the Probation Office.  The PSR stated that the defendant's criminal history
17  category is CHC-VI, but that her criminal history calculation overstated the serious and
18  significance of her criminal record.  (*Id.*, ¶ 59.)  Neither party objects to that determination.
19  Under the Guidelines (offense level seven, CHC-V), the defendant's range is 12-18 months in
20  prison.

21  The PSR recommends the same sentence that the government agreed to recommend in the
22  Plea Agreement: the low end of the Guidelines range.  That sentence, 12 months in prison, is
23  appropriate in this case.  The defendant has asked the Court to give her the *possibility* of a
24  sentence outside the Guidelines range by sentencing her to 12 months and one day, which would
25  let her reduce her sentence for good conduct in prison.  The Court should not agree to that
26  request because it could result in the defendant serving only ten months.  Because the defendant
27  has already escaped from custody twice and needs psychiatric treatment, she should serve 12 full
28  months to satisfy the factors identified in 18 U.S.C. § 3553(a).

## II.
## LEGAL STANDARD AT SENTENCING

Under recent Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The purposes identified in § 3553(a)(2) are: to provide just punishment for the offense; to deter future criminal conduct; to protect the public from further crimes by the defendant; and to give the defendant a chance to rehabilitate herself. *Carty*, 520 F.3d at 991; 18 U.S.C. § 3553(a)(2)(A)-(D).

The Court should begin the process of determining an appropriate sentence by determining the correct guidelines range. *Carty*, 520 F.3d at 991. Once the Court determines the guidelines range, it should use that range as the starting point and the initial benchmark for the sentence. *Id.* The Court should keep the guidelines range "in mind throughout the process." *Id.* The Court should allow the parties to argue for a sentence they believe is appropriate and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Id.* The Court should make an individualized determination based on the facts of each case. *Id.* The Court, however, is not required to raise every possible relevant issue sua sponte. *Id.* Finally, the Court should explain sufficiently the sentence that it imposes to allow meaningful appellate review. *Id.* at 992.

## III.
## 12 MONTHS IN PRISON IS THE APPROPRIATE SENTENCE

**A.    The Correct Guidelines Range Is 12-18 Months In Prison**

The parties and the USPO agree that the following sentencing guidelines calculation is correct:

|  |  |
|---|---|
| Base offense level – USSG §2P1.1(a)(1): | 13 |
| Escape was from a halfway house – USSG §2P1.1(b)(3): | -4 |
| Acceptance of responsibility – USSG §3E1.1(a): | -2 |

1       Total Offense Level:    7

2 (Plea Agreement at 3:7-15; PSR, ¶¶ 12-19.)

3     As stated above, Probation Office found that the defendant's correct criminal history category, CHC-VI overstated her previous criminal record and CHC-V more accurately depicts her criminal past. The parties agree with that assessment.

**B.    A Prison Sentence Of 12 Months Satisfies The 3553 Factors**

    **1.    12 Months Is Appropriate Considering The Nature And Circumstances Of The Offense, And The Defendant's History And Characteristics – 3553(a)(1)**

    Although some of the defendant's history and characteristics weigh in favor of leniency, this is her second conviction for escaping from custody. As the PSR noted, the defendant had a difficult childhood. (PSR, ¶¶ 51-53.) However, the defendant has escaped from custody two times. Therefore, this defendant's conviction is more serious than most other defendants' convictions for escaping from custody, who face escape charges for the first time.

    **2.    12 Months Is Necessary To Promote Respect For The Law And To Deter Future Escapes From Halfway Houses – 3553(a)(2)(A)-(B)**

    Halfway houses are not secured like prisons, so inmates can escape easily by walking away, as this defendant did. The lack of security leads many defendants serving sentences in halfway houses to believe that escaping from a halfway house is not a serious crime. However, defendants who escape from halfway houses force law enforcement authorities to waste valuable resources by conducting arrest operations that are dangerous to officers, dangerous to the escaped defendant, and dangerous to innocent third parties. A sentence of 12 months will discourage this defendant from escaping from a halfway house at the end of her next prison sentence. This factor is particularly important for this defendant, who has escaped from custody once before. That sentence also will deter other inmates from escaping from halfway houses when they learn that this defendant received 12 months for walking out of a halfway house.

    **3.    12 Months Is Necessary To Protect The Public From The Defendant – 3553(a)(2)(C)**

    The defendant has been convicted of aiding and abetting bank robbery, a serious violent

felony. (PSR, ¶ 28.) Although the defendant only drove the getaway car (*id.*), she had a loaded gun in her purse when she was arrested (*id.*, ¶ 33). A prison term of 12 months will ensure that the defendant is incarcerated for 12 months. The defendant's requested sentence, 12 months and one day, could result in her being release in as little as ten months.

  **4. 12 Months Will Provide The Defendant With Opportunities To Receive Counseling From A Therapist Whom She Has Worked With In The Past – 3553(a)(2)(D)**

The defendant needs psychiatric treatment. (PSR Sentencing Recommendations, at p. 2.) She has attempted suicide at least four times, most recently two weeks ago. (PSR, ¶¶ 38-39.) The defendant stated that she wants to continue receiving treatment from a specific therapist at FCI-Dublin, whom she has worked with in the past. (Def. Sent. Mem. at 4:5-7.) Sentencing the defendant to 12 months, instead of 12 months and one day, could give her two additional months of treatment with that therapist.

### IV.
### CONCLUSION

The government and the Probation Office agree that 12 months in prison, the low end of the applicable sentencing guidelines range, is the appropriate sentence for defendant Kimberly Wells. The Court should not impose a sentence any lower, or any higher than the low end of the applicable range. The Court should adopt the recommended sentence because it satisfies recent case law and the factors set forth in 18 U.S.C. § 3553(a). Granting the defendant's request to sentence her to 12 months and one day could result in her receiving a sentence of ten months, which would be too short to satisfy the factors identified in 18 U.S.C. § 3553(a).

DATED: June 23, 2008       JOSEPH P. RUSSONIELLO
                    United States Attorney

                    /s/
                    TAREK J. HELOU
                    Assistant United States Attorney